**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-02452-REB

JAMES RUDOLPH BLACKMON,

     Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,

     Defendant.

---

## ORDER AFFIRMING COMMISSIONER

---

**Blackburn, J.**

     The matter before me is plaintiff's **Complaint** [#1],[2] filed November 5, 2015,

seeking review of the Commissioner's decision denying plaintiff's claim for disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  I

have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

The matter has been fully briefed, obviating the need for oral argument.  I affirm.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

     Plaintiff alleges he is disabled as a result of degenerative disc disease of the

lumbar spine, obstructive pulmonary disease, major depressive disorder, anxiety

disorder, hypertension, headaches, cervical spondylosis, renal insufficiency,

---

    [1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 21, 2017, and thus her name is substituted for that of Carolyn Colvin as the defendant in this suit.  FED. R. CIV. P. 25(d)(1).  By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

    [2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

gastroesophageal reflux disease, and obesity.  After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge.  Following that hearing, the ALJ issued an unfavorable decision, but the Appeals Council remanded for further development of the record.  Thus, a second hearing was held on January 30, 2015.  At the time of this hearing, plaintiff was 58 years old.  He has a high school education with additional vocational training and past relevant work experience as a journeyman electrician and as a meatcutter.  He has not engaged in substantial gainful activity since September 23, 2011, his alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits.  Although the evidence established plaintiff suffered from several severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  Other alleged impairments – including, relevantly, cervical spine disease, headaches, and plaintiff's alleged mental impairments – were found to be non-severe.  The ALJ found plaintiff had the residual functional capacity to perform a range of light work with certain postural and environmental restrictions.  Although this conclusion precluded plaintiff's past relevant work, the ALJ found there were other jobs existing in substantial numbers in the national and local economies he could perform.  She therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council. The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his

physical and/or mental impairments preclude him from performing both his previous

work and any other "substantial gainful work which exists in the national economy."  42

U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the

impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518,

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of

a severe impairment or combination of impairments does not require a finding that an

individual is disabled within the meaning of the Social Security Act.  To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial

gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d

335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation

process for determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is
engaged in substantial gainful activity.  A claimant who is
working is not disabled regardless of the medical findings.

2.  The ALJ must then determine whether the claimed
impairment is "severe."  A "severe impairment" must
significantly limit the claimant's physical or mental ability to
do basic work activities.

3.  The ALJ must then determine if the impairment meets or
equals in severity certain impairments described in Appendix
1 of the regulations.

4.      If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.      If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

### III.  LEGAL ANALYSIS

Plaintiff maintains the ALJ committed reversible error by failing to (1) account for the impact of all his medically determinable impairments, both severe and non-severe, in assessing his residual functional capacity; (2) ascribe appropriate weight to the opinions of the medical expert who testified at the hearing and those of plaintiff's treating sources; and (3) provide legitimate reasons linked to specific evidence in the record for her determination that plaintiff's allegations were less than fully credible. Finding no reversible error in any of these particulars, I affirm.

As noted above, several of plaintiff's claimed impairments were found non-severe at step two of the sequential evaluation.  However, because the ALJ found other impairments to be severe and proceeded to subsequent steps of the analysis, that determination in itself cannot constitute reversible error.  *See Dray v. Astrue*, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009).[3]  Plaintiff argues the error was not harmless,

---

[3]  At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment.  *See Dray*, 353 Fed. Appx. at 149.  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  "Thus, step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"  *Dray*, 353 Fed. Appx. at 149 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156, 107 S.Ct. 2287, 2298, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring)).  Because the conclusion that a claimant has at least one severe impairment requires the ALJ to proceed to the next step of the sequential evaluation, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."  *Id.*

however, because the ALJ failed to account for plaintiff's cervical issues, headaches, and depression in her residual functional capacity determination.  *See* 20 C.F.R. § 404.1545(a)(2); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*") (emphasis in original).

I am unpersuaded.  The Tenth Circuit has made clear that an ALJ's findings at steps two and three of the sequential evaluation need not necessarily be translated into work-related functional limitations in the residual functional capacity assessment at step four.  *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *Suttles v. Colvin*, 543 Fed. Appx. 824, 826-27 (10th Cir. Oct. 31, 2013).  *See also Miller v. Astrue*, 2012 WL 1388706 ast *5 (D. Colo. April 23, 2012), *aff'd*, 520 Fed. Appx. 741 (10th Cir. April 9, 2013).  Moreover, while the regulations obligate the ALJ to *consider* whether the plaintiff's severe and non-severe impairments in combination are severe, *see* 20 C.F.R. § 404.1545(a)(2), they do not require her to specifically *address* all such impairments, *see Birkle v. Colvin*, 82 F.Supp.3d 1308, 1314 n.8 (D. Colo. 2015).

Nevertheless, the ALJ here thoroughly vetted plaintiff's allegations relating to his non-severe impairments of cervical spondylosis, headaches, and depression. Addressing plaintiff's cervical spine issues, the ALJ noted that, despite some evidence of a cervical disorder, plaintiff's complaints of pain associated with that impairment were inconsistent, not substantiated by objective medical evidence, and belied by his activities of daily living, observations which are born out by the record evidence on which she relied.  (Tr. 41, 42-43; *see also* Tr. 540, 651, 775-777.)  Likewise, the ALJ

pointed to evidence in the record suggesting plaintiff's headaches were adequately

controlled by medication.  (Tr. 43; *see also* Tr. 564, 623.)  Finally, the ALJ noted that,

despite periodic reports of feeling depressed, plaintiff did not seek mental health

treatment until June 2014 (Tr. 835-837) and was not evaluated by a psychologist until

November (Tr. 833-834).  Mental health evaluations performed in 2013 and 2014

assessed plaintiff with GAF scores of 65 and 70, respectively, indicative of only mild

limitations.[4]  (Tr. 618, 830.)  Moreover, plaintiff initially refused medication to treat this

alleged impairment, only changing his mind a month prior to the hearing (Tr. 860). (Tr.

43-45.)[5]  Thus, while "a finding of non-severity alone would not support a decision to

prepare an RFC assessment omitting any [non-severe] restriction," the ALJ's discussion

of the evidence fully substantiates her decision to omit any functional limitations

associated with these non-severe impairments from her residual functional capacity

assessment.  *Wells*, 727 F.3d at 1065.  *See also Best-Willie v. Colvin*, 514 Fed. Appx.

728, 733 (10th Cir. March 26, 2013) (lack of contemporaneous discussion not fatal if

opinion as a whole supports ALJ's conclusion); *Endriss v. Astrue*, 506 Fed. Appx. 772,

777 (10th Cir. Dec. 26, 2012) (ALJ "is not required to continue to recite the same

evidence again" if already discussed earlier).

---

[4]  "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (Text Revision 4th ed. 2000) ("DSM-IV")).  A GAF score of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well." DSM-IV at 32.

[5]  The ALJ also thoroughly explained her rationale for rejecting the opinions of a consultative examiner and a non-examining state agency psychologist suggesting plaintiff had moderate limitations in concentration, persistence, and pace.  (Tr. 43-45.)

Plaintiff next maintains the ALJ should have given greater weight to the opinions of the medical expert who testified at the hearing, Dr. Irvin Belzer, and plaintiff's treating physician, Dr. David Yamamoto.[6]  While plaintiff focuses on these opinions, it is important to note that the record in this case contains twelve different source opinions as to plaintiff's functional abilities, which conflict with one another in consequential particulars.  (*See* **Plf. Br. App.**, Exh. 1; *see also* Tr. 43 (noting "multiple, sometimes conflicting, opinions in the record, as to what the claimant can do").)  The ALJ's yeoman-like effort in analyzing these opinions in light of one another and of the voluminous record as a whole cannot be gainsaid.  Given the number and inconsistency of the opinions in the record, the evidence undoubtedly could have been interpreted differently.  Nevertheless, "[t]he substantial-evidence standard does not allow [the court] to displace the agencies' choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  ***Lax v. Astrue***, 489 F.3d 1080, 1088 (10th Cir. 2007) (citation and internal quotation marks omitted).  I find and conclude ultimately that the ALJ here properly exercised her prerogative to resolve these conflicts in the evidence.  ***See Reyes v. Bowen***, 845 F.2d 242, 245 (10th Cir. 1988); ***Gleason v. Apfel***, 1999 WL 714172 at *4

---

[6]  Plaintiff also claims greater weight should have been afforded the opinion of nurse practitioner Jessica Viton. (Tr. 818-824.) Plaintiff's characterization of Ms. Viton as a "treating source" cannot withstand scrutiny.  Only an acceptable medical source can be considered a treating source, 20 C.F.R. § 404.1513(a), and a nurse practitioner is not an acceptable medical source, ***Zagorianakos v. Colvin***, 81 F.Supp.3d 1036, 1041 (D. Colo. 2015).  Ms. Viton's opinion therefore is not entitled to controlling weight, although it still must be considered using the same factors as are considered in weighing medical source opinions, *see* **Social Security Ruling** 06-03p, 2006 WL 2329939 at *3-4 (SSA Aug. 9, 2006).  ***See also*** 20 C.F.R. § 404.1527(c)(2)-(6); ***Frantz v. Astrue***, 509 F.3d 1299, 1302 (10th Cir. 2007); ***Zagorianakos v. Colvin***, 81 F.Supp.3d 1036,1043 (D. Colo. 2015).  Moreover, assuming *arguendo* there was any error in the ALJ's consideration of Ms. Viton's opinions, it undoubtedly was harmless.  ***See Williams v. Chater***, 1995 WL 490280 at *2 (10th Cir. 1995); ***Bernal v. Bowen***, 851 F.2d 297, 303 (10th Cir. 1988).  The ALJ's analysis of the medical source statements and the totality of the record as a whole provide more than adequate bases to discredit Ms. Viton's opinions.

(D. Kan. Sept. 1, 1999).

Dr. Yamamoto has been plaintiff's treating doctor since 2003.  The opinion of a treating source is entitled to controlling weight (i.e., determinative) when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source opinion may not be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision.  *Watkins*, 350 F.3d at 1301.  Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

In March 2013, Dr. Yamamoto issued an opinion purporting to limit plaintiff to less than sedentary work due to "constant" and "chronic" low back pain and "frequent" neck pain[7] and suggesting plaintiff had been so limited since his alleged date of onset in September 2011.  (*See* Tr. 204-209.)  The court perceives no reversible error in the ALJ's refusal to afford this opinion any – let alone controlling – weight.  The ALJ rejected this opinion as unsupported by either the doctor's own treatment notes or the other evidence of record.  (Tr. 46.)  Not only are these both valid considerations in weighing a medical source opinion, *see* 20 C.F.R. §§ 404.1527(c)(3) & (4), they are amply supported by the record in this case.

---

[7]  Dr. Yamamoto also stated plaintiff suffered from vertigo (Tr. 208), but as the ALJ correctly noted, there is no evidence plaintiff ever complained of or was evaluated for vertigo by Dr. Yamamoto or any other medical source (Tr. 46).

Contrary to plaintiff's argument, the ALJ accurately portrayed the scope of Dr. Yamamoto's clinical records in observing that plaintiff did not complain of pain in his neck until the day he visited Dr. Yamamoto to request his disability opinion in March 2013, despite claiming at that time that he had suffered from neck pain since his alleged date of onset in September 2011.  (*See* Tr. 645.)  Although a neurologist to whom Dr. Yamamoto referred plaintiff (*see* Tr. 571), noted plaintiff's report of "neck discomfort" associated with the original injury, which plaintiff said was "dissipating" and "not as constant any more," as well as "[s]ome paraspinal cervical spasm and trapezius muscle spasm," neither his assessment nor his plan addressed this impairment (Tr. 532, 534). More to the point, Dr. Yamamoto did not report any of these findings in his own treatment notes, and nothing therein suggests Dr. Yamamoto either examined or treated plaintiff for neck pain.  Given this evidence, it was permissible to infer that Dr. Yamamoto was either unaware of or unconcerned by plaintiff's neck pain.  Certainly, the ALJ's detailed discussion of the other record evidence related to this alleged impairment clearly shows that any error that may have been thought to arise in this respect undoubtedly was harmless.  (Tr. 42-43.)  *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal."); *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence).

With respect to plaintiff's back impairment, Dr. Yamamoto consistently noted plaintiff's decreased lumbar range of motion and low back tenderness.  (Tr. 570, 572, 574, 578, 580, 647, 657.)  Nevertheless, his records also show that plaintiff's straight leg test was negative (Tr. 578), that he was able to heel and toe walk (Tr. 578), and that

he exhibited no weakness or numbness in his extremities (Tr. 570).  Dr. Yamamoto's

notes also reflect that while plaintiff reported constant lower back pain, medications

helped decrease his pain to a 3 or 4 (out of 10) without side effects (Tr. 572, 574, 647,

657), and a brief course of physical therapy in 2012 also provided mild relief and was

recommended again in 2013 (Tr. 578, 647).  In addition, the other evidence of record,

thoroughly examined in the ALJ's opinion, was more than adequate to support her

conclusion that the extreme limitations suggested by Dr. Yamamoto were not entitled to

weight.[8]  *See Thompson*, 987 F.2d at 1487 (court may not reweigh evidence where

"reasonable mind" would find evidence adequate to support decision); *Zagorianakos v.*

*Colvin*, 81 F.Supp.3d 1036,1045 (D. Colo. 2015) (same).

Nor did the ALJ err in weighing the opinion of Dr. Belzer, who was called as a

medical expert to testify at the hearing.  Reviewing the evidence of plaintiff's complaints

of low back pain, Dr. Belzer concluded there was no "significant functional limitation"

related to that impairment.  (Tr. 96.)  Nevertheless, he opined*, inter alia*, that plaintiff

could walk and stand no more than four hours a day.  (Tr. 101.)  Because plaintiff had

no transferable skills to any job that limited him to less than four hours of walking and

standing a day, this restriction would eliminate all the alternative jobs identified by the

vocational expert.  (*See* Tr. 121.)  In other words, were plaintiff indeed limited to walking

and standing no more than four hours a day, the ALJ's step five determination would be

unsound.  Moreover, under the Commissioner's Medical Vocational Guidelines, plaintiff

---

[8]  The ALJ also noted Dr. Yamamoto did not examine plaintiff on the day he rendered his opinion and that the limitations he therein endorsed coincided suspiciously with plaintiff's subjective complaints on that day.  (Tr. 46.)  Although plaintiff points out that Dr. Yamamoto was in the best position to have a longitudinal picture of his condition, *see* 20 C.F.R. § 404.1527(c)(2), the doctor's opinion is at odds with the longitudinal record reflected in his treatment notes.  In addition, and as discussed more fully below, the ALJ was not required to accept Dr. Yamamoto's contrary and uncritical assessment of the credibility of plaintiff's self-reported limitations.

would presumptively would be disabled.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, § 202.06.

The ALJ essentially rejected this aspect of Dr. Belzer's opinion, however.  (Tr. 48.)  Instead, she afforded more weight in this particular to the less restrictive opinions of two state agency physicians, Drs. Horsley and Terry, both of whom suggested plaintiff could walk or stand for six hours a day.  (Tr. 804, 842.)  *See* **Social Security Ruling** 96-6p, 1996 WL 374180 at *2-3 (SSA July 2, 1996) (noting "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act," and thus, "[i]n appropriate circumstances, [their] opinions . . . may be entitled to greater weight than the opinions of treating or examining sources").  The ALJ justified her decision by saying that Dr. Belzer failed to explain why plaintiff's abilities to walk and stand should be so limited, especially in light of the lack of any evidence of ataxic gait or other difficulties with walking, neurologic problems, or other impairment of function of the lower extremities.  (Tr. 48.)

Plaintiff protests that, contrary to the ALJ's statement, Dr. Belzer did offer an explanation for his opinion.  Specifically, when asked why he imposed these limitations given the mild findings of musculoskeletal issues, Dr. Belzer stated, "I think it's limited in the sense that we don't find associative problems, but I think he has enough disk [*sic*] changes, you know, again, physically, if the disk [*sic*] and that abuts the thecal sac, to me that's severe enough to be the source of pain."  (Tr. 103.)  Elsewhere in his testimony, Dr. Belzer stated, "I just don't see any real functional impairment, other than the fact that he's having the pain."  (Tr. 99.)  In other words, the reason Dr. Belzer gave for limiting plaintiff's abilities to walk and stand hinged on plaintiff's complaints of pain.

While Dr. Belzer thus did give an explanation for plaintiff's pain, he did not explain why that pain should be quite so limiting, especially when he elsewhere acknowledged the mild diagnostic and examination findings and the lack of any appreciable "functional difficulties," such as ataxic gait, neuropathy, radiculopathy, difficulty walking, muscle atrophy.  (Tr. 95-96, 99.)[9]  It thus appears Dr. Belzer fully credited plaintiff's own reports of limitations due to pain.  The ALJ, however, did not. Nor was she required to.[10]  "[W]hen the ALJ has properly discredited a claimant's subjective complaints of pain, he need not accept a medical source opinion premised on a contrary estimation of the claimant's credibility regarding her own functional and other limitations."  *Anderson v. Colvin*, 2013 WL 3216140 at *4 (D. Colo. June 25, 2013).  It is thus to the issue of credibility that I now turn.

In general, "credibility determinations 'are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Although plaintiff faults the ALJ for purportedly failing to link her credibility assessment to specific evidence in the record, she plainly did not err in this regard.  *Id.*

---

[9]  The ALJ further noted that plaintiff reported to a consultative examiner, Dr. Richard Carson, that his daily activities included housework and yard work.  (Tr. 48, 776.)  Contrary to plaintiff's argument, there is no inconsistency in the ALJ's reliance on this aspect of Dr. Carson's report – which simply records plaintiff's own report of his activities of daily living – and her decision to give Dr. Carson's medical opinion that plaintiff was capable of medium work less weight.  (Tr. 47.)

[10]  Plaintiff's argument that the ALJ impermissibly substituted her own lay judgment for that of a medical source in this regard, *see Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004), ignores the fact that the ALJ was not purporting to assert a medical opinion but to craft a residual functional capacity assessment, which is not a medical determination but an administrative one, and thus reserved to the Commissioner,  20 C.F.R. § 404.1546(c); *Lumpkin v. Colvin*, 112 F.Supp.3d 1169, 1173 (D. Colo. 2015). The ALJ here merely evaluated Dr. Belzer's opinion in the context of the medical evidence, which is entirely within her legitimate purview.  *See Lopez v. Barnhart*, 183 Fed. Appx. 825, 829 (10th Cir. June 13, 2006).  *See also* 20 C.F.R. § 404.1527(c)(3).  *Cf. Hamlin*, 365 F.3d at 1121 (ALJ erred in finding the plaintiff's complaints not credible on basis that the plaintiff did not require an assistive device for his neck, where no medical professional ever opined such a device was required or would have proven efficacious in addressing the plaintiff's pain).

at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Her credibility

determination thus is entitled to substantial deference.  *White*, 287 F.3d  at 910.

Referring only to the ALJ's final comments summarizing her credibility

determination, plaintiff conveniently ignores the nine full pages of discussion and

analysis which preceded it.  Reading the opinion as a whole, it is abundantly clear that

the reasons given by the ALJ for affording less than full credibility to plaintiff's reports of

pain and limitation are adequately substantiated.  (*See* Tr. 39-48.)  As noted previously,

the ALJ presented a comprehensive and well-reasoned analysis of the evidence of

record, reconciling the multiple conflicting medical source opinions with one another and

the voluminous medical and other evidence, which is substantiated by the record.

There was no reason for her to repeat this analysis separately in the context of her

credibility assessment.  *See Best-Willie*, 514 Fed. Appx. at 733; *Endriss*, 506 Fed.

Appx. at 777.

The ALJ also noted plaintiff had given "multiple inconsistent statements regarding

his impairments, and the extent of his limitations" which diminished his overall credibility,

citing the opinions of two independent medical examiners who assessed plaintiff in 2011

for purposes of his workers compensation claim.  (*See* Tr. 48, 451, 651.)  Plaintiff

maintains these opinions do not support the ALJ's credibility finding because they only

question the mechanism, but not the fact, of his injury.  I cannot agree that a lack of

credibility in this particular has no bearing on the credibility of plaintiff's allegations of

disability in general.  There is certainly a permissible inference to be made that a

claimant who might dissemble as to whether his injury was work-related in connection

with a claim for benefits in one context might also exaggerate the extent of his injury

when seeking benefits in a different context.  Moreover, although the ALJ's proffered

example does not really bear scrutiny,[11] the record contains other, substantial evidence supporting the ALJ's conclusion that plaintiff's complaints of pain and limitation were inconsistent and disproportional to the objective medical evidence.  Based on the totality of this evidence, the ALJ's credibility assessment is supported by substantial evidence, and thus provides no ground for remand.

Without question, plaintiff plainly still suffers from pain related to his impairments. Nevertheless, "disability requires more than mere inability to work without pain." *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986) (citation and internal quotation marks omitted).  *See also Qantu v. Barnhart*, 72 Fed. Appx. 807, 811 (10th Cir. 2003) ("We emphasize that a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled.").  The record supports the ALJ's determination that plaintiff had the residual functional capacity for a reduced range of light work, despite his severe impairments and their acknowledged symptoms.  Plaintiff has not demonstrated reversible error in the ALJ's disability determination, which accordingly must be affirmed.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

---

[11]  The ALJ claimed to perceive inconsistency in plaintiff's statements to his physical therapist (erroneously attributed to the consultative examiner Dr. Carson) about his reasons for not working in the month after his injury.  On October 10, 2011, plaintiff reported to Dr. Randall Jones that he had tried to work light duty but went home after just two hours and, hesitant to try again, "chose not to work."  (Tr. 526.)  That same day, he told physical therapist Martin Romero that he had taken himself off work (Tr. 587), and two days later said he was not working because his employer could not accommodate modified activity (Tr. 584).  Contrary to the ALJ's interpretation (*see* Tr. 40, 48), these explanations appear to be roughly consistent with one another.

Dated February 16, 2017, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge